IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Betty Allison,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) | Civil Action No. 8:04-22279-CMC-BHH |
| ⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀) | **REPORT OF MAGISTRATE JUDGE** |
| ⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀) | |
| Jo Anne B. Barnhart,⠀⠀⠀⠀) | |
| Commissioner of Social Security,⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀Defendant.⠀) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On December 14, 2001, the plaintiff filed an application for DIB alleging disability beginning March 18, 1998. The application was denied initially and on reconsideration. The plaintiff requested a hearing, which was held on September 10, 2003. Following the hearing, at which the plaintiff and her attorney appeared, the administrative law judge considered the case *de novo*, and on November 25, 2003, determined that the

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

plaintiff was not entitled to benefits.  This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on August 10, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. On December 14, 2001, the claimant filed a Title II application for disability insurance benefits, alleging a disability onset date of March 18, 1998.

2. The claimant filed a prior Title II application on April 21, 1998, alleging a disability onset date of March 18, 1998. This application was denied initially, upon reconsideration, and by an Administrative Law Judge issued on March 31, 1999.

3. The pertinent period for establishing disability commences April 1, 1999, the day after the Administrative Law Judge decision issued on March 31, 1999.

4. The claimant met the earnings requirements of Social Security Act as of April 1, 1999, and she has continued to do so at least through the date of this decision.

5. The claimant is 48 years old and has a "limited" education.

6. The claimant's past vocational experience was as a dresser operator and an aspect classifier for a tire manufacturing company.  As a dresser operator, she performed unskilled, light work, and as an aspect classifier, she performed low semi-skilled, medium to heavy work.

7. The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

8. The claimant suffers from the following medically determinable, "severe" impairments: degenerative disc disease, a cervical strain, chronic obstructive pulmonary disease, hypertension, and headaches.  She has no other "severe" impairments.

9. The claimant has suffered no mental or physical impairment, or any combination of impairments, which

2

meets or is medically equivalent to any of the impairments listed in Appendix 1 to Subpart P of Social Security Regulations No. 4.

10. The claimant's testimony was not fully credible with respect to her symptoms, including pain, and resulting functional limitations.

11. At all pertinent times, the claimant has had a residual functional capacity for sedentary work that is performed in a clean environment, with no respiratory irritants and no extremes of temperature or humidity, and that does not require rapid neck movements, working around hazardous equipment, working around vibrations or loud noises, or the climbing of ladders or scaffolds.

12. The claimant's impairments preclude the performance of all of her past relevant work. She does not have any transferable skills.

13. Credible vocational expert testimony establishes that there are a significant number of unskilled, "sedentary" jobs in the economy, with the nonexertional limitations noted above, which the claimant can perform.

14. Given the claimant's age, education, past vocational experience, lack of transferable skills, and residual functional capacity for unskilled "sedentary" work, Rule 201.19 of the Medical-Vocational Guidelines, in conjunction with the testimony of the vocational expert, directs a conclusion that the claimant is not "disabled within the meaning of the Social Security Act.

(Tr. 31-32).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## **BACKGROUND**

The plaintiff was born on December 7, 1954 and was 48 years old at the time of the hearing (Tr. 602). She has a 10th grade education. Her past relevant work experience includes a dresser operator and an aspect classifier in tire manufacturing (Tr.

3

602-603).  The plaintiff alleges that she became disabled on March 18, 1998 due to chronic back pain and chronic obstructive pulmonary disease.[2]

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62.  The plaintiff bears the burden of establishing his inability

---

[2] A previous application by the plaintiff for disability benefits was denied initially, upon reconsideration and by an Administrative Law Judge in a decision dated March 31, 1999 (Tr. 17).

to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there

is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends the ALJ erred in finding her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give adequate weight to the opinions of her treating physicians; and (2) assessing the plaintiff's credibility.

### *Treating Physicians' Opinions*

The plaintiff first contends that the ALJ did not give proper weight to the opinions of her two treating physicians, Dr. R.S. Harley and Dr. Gregory Feldman, and that he ignored "important aspects" of Dr. Glenn Scott's evaluation, who performed a functional capacities assessment of the plaintiff.

The plaintiff has a long history of back problems (Tr. 174). By 1996, she was diagnosed with L 4-5 rotatory degenerative scoliosis with nerve root impingement (Tr. 177). Dr. Harley performed spinal decompression and fusion surgery in November, 1996 (Tr. 176). Dr. Harley continued to provide care and treatment of the plaintiff following the surgery. On March 18, 1998, Dr. Harley noted that the plaintiff's "[e]xamination is largely unchanged." He went on to state: "I believe that the patient is experiencing a level of pain that makes it impossible for her to work. I believe she will have to retire from her work to simply work around the house from here on out." (Tr. 236). On October 29, 1998, Dr. Harley stated:

> [Ms. Allison] continues to have chronic and severe pain associated with spinal nerve root compression. Ms. Allison has been through extensive spine surgery in 1996 and is now left with a state of chronic pain and stiffness in her back which makes her 100% disabled. I do not think she can return to productive type work at Michelin. Also, I think she can be considered 100% disabled.

6

(Tr. 214).  In an affidavit dated April 8, 1999, Dr. Harley reiterated his opinion:

> I understand that Ms. Allison has been employed with Michelin as an inspector and doing production type work.  Her job required standing, pushing and pulling.  Ms. Allison was assessed with L4-5 rotatory degenerative scoliosis with nerve root impingement.  Extensive spine surgery, including wide decompression with facetectomies at L4-5, posterior lumbar interbody fusion at L4-5 using Harms cages and spinous process bone and ORIF of L4 to L5 using Moss-Miami pedicle screws and rods, was performed on Ms. Allison in November of 1996.  She continues to suffer with chronic and severe pain and stiffness in her back, Because of the physical problems from which she suffers, I am able to state that at this time Ms. Allison is totally disabled and prevented from working on a full-time continuous and regular basis.

(Tr. 222-223).  In August, 2003, Dr. Harley completed a pain questionnaire in which he stated that the plaintiff's pain is present to the extent that it would be distracting to adequate performance of daily activities or work. He further indicated that physical activity will greatly exacerbate her pain and cause distraction from task or abandonment of the tasks, and that the plaintiff's medications cause significant side effects that would limit her effectiveness in work duties.  He stated that he believes the plaintiff to be totally disabled (Tr. 575-579).

The plaintiff also has chronic obstructive pulmonary disease.  Dr. Feldman was her treating physician for this condition.  On January 20, 2003, Dr. Feldman completed an evaluation form in which he stated that there is no way to predict how often the plaintiff will have acute exacerbations of her condition.  He stated that she can lift up to 10 pounds and should avoid exposure to dust, smoke, fumes and gases.   Dr. Feldman also said that the plaintiff's condition is affected by weather changes and he opined that she is not capable of sustaining full time work (Tr. 560 - 562).

Dr. Glenn Scott performed an functional capacity evaluation of the plaintiff on May 13, 1999.  He indicated that the plaintiff experienced pain during the evaluation.  Dr. Scott stated that:

7

> [t]he progressive lifting of a squat lift and high near lift would indicate capabilities at a medium physical demand level, but with the associated pain that she experienced as well as the back lift being limited to only 7.1 lbs., I really feel that her lifting capabilities on a short term basis would be more in the sedentary to light physical demand levels. I also seriously doubt that she could sustain these activities for a full eight hour day for a five day week. Also, she would very likely have to alternate between sitting, standing, and walking positions about every fifteen to thirty minutes.
>
> Based on her current findings, I do not feel that she is capable of returning to her previous type of employment.

(Tr. 219 - 220).

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). A "medical opinion" is a "judgment[] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(20. However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

The plaintiff claims that the ALJ erred by applying an incorrect legal standard with regard to the opinions of Dr. Harley and Dr. Feldman. As to Dr. Harley's opinion, the plaintiff argues that the ALJ required that the opinion be consistent with the other evidence, when the proper standard, as set forth above, is that the treating physician's opinion must

8

be "not inconsistent" with the other evidence. This argument has merit. When the proper standard is applied, it appears clear that the opinions of Dr. Harley and Dr. Feldman are not inconsistent with other substantial evidence in the record. Dr. Feldman stated that the plaintiff could engage in some sedentary activities, but he specifically stated that she is not capable of performing a full time job working eight hours a day on a consistent and sustained basis (Tr. 562). Thus, Dr. Harley's opinion is not inconsistent with this evidence. Additionally, Dr. Scott indicated his doubt that the plaintiff could sustain consistent full time employment, consistent with the opinions of the plaintiff's two treating physicians.

The ALJ found that the plaintiff's ability to drive, shop with her husband, fix sandwiches, read, walk next door to visit her son, watch television, quilt once a month, listen to the radio, deal with her finances and personal needs, play one or two songs on the piano, and do some housework "supports a finding that the medical opinions of Drs. Harley and Feldman are not entitled to great weight, to the extent that they are offered to establish an inability to work in any capacity." (Tr. 29). This court disagrees. The activities listed by the ALJ are limited and do not show an ability to sustain full time employment. In fact, the opinions of Dr. Harley and Dr. Feldman are not inconsistent with the plaintiff's testimony as to her activities of daily living.

Dr. Harley has treated the plaintiff for her back problems since at least 1996. Dr. Feldman has been treating the plaintiff for her respiratory problems for several years as well. The treatment notes from Dr. Harley indicate that the plaintiff has consistently complained of back pain, stiffness, and spasms, with resulting limited function. Dr. Feldman's treatment notes indicate that the plaintiff has respiratory problems which result in shortness of breath and wheezing. In addition, pulmonary function tests administered by Dr. Feldman clearly show reduced pulmonary function, as acknowledged by the ALJ. Because the opinions of the treating physicians are not inconsistent with other substantial evidence in the record, the ALJ erred in failing to give these opinions controlling weight.

9

The plaintiff also argues that the ALJ did not engage in a proper analysis in rejecting the treating physicians' opinions. While it appears to this court that the plaintiff is correct, it also appears that if the opinions of Dr. Harley and Dr. Feldman are given controlling weight, the conclusion is inescapable that the plaintiff is disabled. Therefore, rather than remanding the matter to the ALJ for a proper analysis, the court recommends that the decision of the ALJ be reversed and benefits be awarded to the plaintiff.

### Subjective Complaints

The plaintiff also alleges that the ALJ erred in rejecting the plaintiff's testimony regarding her pain and other limitations. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).

The ALJ found that the plaintiff suffers from several "severe" impairments, including degenerative disc disease with scoliosis and a status post fusion, hypertension, and chronic obstructive pulmonary disease, but he went on to find that the plaintiff's "testimony was not fully credible with respect to her symptoms, including pain and resulting functional limitations." (Tr. 26). The ALJ does not clearly discuss the factors in his credibility analysis. Instead, he methodically goes through her medical history, noting isolated "normal" findings, and refers to the opinions of her doctors, which he rejects. In his discussion of the opinions of the treating physicians, the ALJ discusses the plaintiff's testimony as to her daily activities, but, again, he does not specifically refer to any evidence in his credibility analysis.

The ALJ clearly did not specify in detail the reasons for his finding that the plaintiff was not credible and that her limitations were not as great as she testified. In fact, the plaintiff's testimony reveals that her activities of daily living are limited. She testified that she used to do the majority of the housework in her home, but that now her husband has to do the work because she is unable to do it (Tr. 618). She testified that she used to enjoy quilting and playing the piano, but now she only can sew for short periods of time and can play one or two songs on the piano before her back starts hurting her (Tr. 618-619). She can drive, but only does so when it is absolutely necessary, generally no more than twice a week for short distances (Tr. 697). She is unable to pick up her grandchildren or play with them like she used to enjoy doing (Tr. 616). The plaintiff testified that, while she has good days and bad days, there is never a day where she is pain-free (Tr. 613). She also has to do breathing treatments four times a day for her respiratory condition (Tr. 610).

The symptoms and limitations which the plaintiff testified she experiences are reasonably consistent with the medical evidence and the conditions from which she suffers. Clearly, a claimant is not required to be bedridden or completely helpless in order to be found to be disabled. *Totten v. Califano*, 624 F.2d 10, 11-12 (4th Cir. 1980). The plaintiff's limited daily activities simply do not contradict her allegations of severe and disabling pain. Accordingly, the ALJ erred in finding the plaintiff's testimony as to her limitations to be not credible, as the testimony is not inconsistent with the medical and other evidence.

### CONCLUSION AND RECOMMENDATION

The record does not contain substantial evidence supporting the Commissioner's decision denying coverage under the correct legal standard, and reopening the record for more evidence would serve no purpose. *See Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Therefore, based upon the foregoing, it is recommended

11

that the Commissioner's decision denying the plaintiff's application be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the plaintiff be awarded benefits.

s/ Bruce H. Hendricks
United States Magistrate Judge

December 29, 2005
Greenville, South Carolina