```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA
                       ANDERSON DIVISION
```

| | |
|---|---|
| BETTY ALLISON,               ) | C/A No.8:04-22279-CMC-BHH |
|         Plaintiff,             ) | |
| v.                           ) | |
|                               ) | **OPINION AND ORDER** |
| JO ANNE B. BARNHART,         ) | |
| Commissioner of Social Security Administration, ) | |
|         Defendant.            ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security Administration (hereinafter "Commissioner"). The matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") made in accordance with 28 U.S.C. § 636(b)(1)(B) and the local rules of this court.[1]

Critical to the present order are the Magistrate Judge's conclusions that: (1) the Administrative Law Judge (ALJ), whose opinion became that of the Commissioner failed to "engage in a proper analysis in rejecting the treating physicians' opinions"[2]; and (2) if the treating physicians' opinions are given controlling weight, "the conclusion is inescapable that the plaintiff is disabled." Report at 10. Based on these subordinate conclusions, the Magistrate Judge further concluded that "[t]he record does not contain substantial evidence supporting the Commissioner's decision denying

---

[1] The Commissioner filed objections on January 17, 2006. Plaintiff filed a responsive memorandum on February 2, 2006.

[2] Specifically, the Magistrate Judge concluded that the ALJ had incorrectly required the treating physicians' opinions' be "consistent with" other evidence in the record, rather than requiring that it be "not inconsistent" with that other evidence. Report at 8-9. She further concluded that it was "clear that the opinions of Dr. Harley and Dr. Feldman are not inconsistent with other substantial evidence in the record." Record at 9.

coverage under the correct legal standard." Report at 11. The Magistrate Judge, therefore, "recommended that the Commissioner's decision denying the plaintiff's application be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the plaintiff be awarded benefits." Report at 11-12. For the reasons set forth below, this court disagrees and affirms the decision of the Commissioner.

### I. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to her with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error those aspects of the Report as to which there are no objections. *See Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310 (4th Cir. July 25, 2005).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*,

483 F.2d 773, 775 (4th Cir. 1972).

"From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

In the present case, the most significant disputed issue relates to the deference normally afforded to a treating physician's opinion. Such an opinion as to a patient's physical capabilities and medical condition is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) (2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). On the other hand, no deference need be given statements that contain a legal conclusion such as that the patient is "disabled," "unable to work," or meets the requirements of a Listing. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). *See also Turley v. Sullivan,* 939 F.2d 524, 527 (8th Cir. 1991) (finding "ALJ properly discounted the portions of [treating physicians'] opinions based on vocational matters" where the physicians were not qualified as experts in those matters).

## II. OBJECTIONS

The Commissioner objects to the Report's recommendations that this court find that: (1) the ALJ failed to give proper weight to the opinion of Plaintiff's treating physicians R.S. Harley, M.D., and Gregory Feldman, M.D.; and (2) properly weighed, the evidence did not support the conclusion of the ALJ. The Commissioner, therefore, asks this court to decline to accept the Report and to, instead, affirm the decision of the Commissioner.

## III. DISCUSSION

In a seventeen-page decision (Record at 16-32), the ALJ detailed Plaintiff's medical history and explained his reasons for rejecting the opinions of Plaintiff's treating physicians to the extent those opinions suggested Plaintiff was "totally disabled" from any occupation. In this regard, it is notable first that such opinions are either legal determinations reserved to the Commissioner or vocational determinations beyond the expertise of these treating physicians.

Moreover, many of the records which refer to Plaintiff's "disability" or "inability to work," do so with reference to her former medium to heavy duties. For example, the ALJ noted that although Dr. R. Stephen Harley opined on March 18, 1998, that Plaintiff "was experiencing 'a level of pain that [made] it impossible for her to work,'" this statement, placed in the context of Dr. Harley's other notes, suggests only that Plaintiff was unable to perform her then-current job which involved heavy work. *See* Record at 19 (quoting Record at 236–Dr. Harley's office notes); *and* Record at 27 (discussing rejection of Harley opinion to the extent it suggests Plaintiff is "unable to perform any work activity" including by specifically noting that Harley "did not state that [Plaintiff] was unable to perform less physically demanding jobs" than her work at Michelin).

This interpretation of the medical records is fully supported by an October 29, 1998 entry in Dr. Harley's own records in which he stated "I do not believe the patient can return *to the heavy work of the Michelin Corporation*." Record at 238 (emphasis added). Therefore, taken in context, Dr. Harley's April 9, 1999 affidavit-opinion that Plaintiff was "totally disabled" may fairly be interpreted to refer only to Plaintiff's inability to do medium to heavy work:

> I understand that Ms. Allison has been employed with Michelin as an inspector and doing production type work. Her job required standing, pushing and pulling. . . . She continues to suffer with chronic and severe pain and stiffness in her back. Because of the physical problems from which she suffers, I am able to state that Mr. Allison is prevented from returning *to her job duties at Michelin.* I am able to state that at this time Ms. Allison is totally disabled and prevented from working on a full-time continuous and regular basis.

Record at 222.[3]

The ALJ also noted various inconsistencies between Dr. Harley's contemporaneous office notes and any opinion that Plaintiff was, in 1999, so disabled by pain or otherwise that she could not perform even sedentary work. Record at 19-20 (ALJ decision discussing Dr. Harley's notes of Plaintiff's office visits ). Similarly, the ALJ points to references in Dr. Harley's more recent records which the ALJ reasonably found to be inconsistent with the conclusion that Plaintiff's back pain disabled her from *any* employment. *See* Record at 23 (discussing Dr. Harley's records from late 2001 into early 2002 (Record at 445-47) which, on three successive visits, describe Plaintiff's back as "still achy" or "still a bit achy," indicates Plaintiff has a good range of motion, albeit with some

---

[3] The ALJ refers to this as a September 28, 1999 affidavit, apparently referring to the date the notary's commission expired. The correct date of the affidavit appears to be April 8, 1999. This error in date is not, however, significant.

5

pain, and which result in conservative treatment).[4]  *See also* Record at 221 (form completed by Dr. Harley on August 21, 2001 listing only "no stooping, bending, kneeling," in setting forth Plaintiff's restrictions and limitations but checking off both that she is not released to return either to her own or *any occupation*).[5]

The record, likewise, supports the ALJ's interpretation of Dr. Glenn L. Scott's independent medical examination ("IME") of Plaintiff which was conducted on May 18, 1999. *See* Record at 27-28 (concluding Scott IME supported the conclusion Plaintiff had various lifting limitations and needed to shift position frequently but did not support the conclusion "that she was incapable of performing work [if it] provided for this type of accommodation").   In his cover letter, Scott states that Plaintiff's lifting capabilities "on a short term basis would be more in the sedentary to light physical demand levels."  He further states that he "seriously doubt[s] that she could sustain these activities for a full eight-hour day for a five-day week" and that she would also need to "alternate between sitting, standing, and walking positions about every fifteen to thirty minutes." Record at 219-20. Ultimately, however, Scott concludes as follows: "Based on her current findings, I do not

---

[4] For example, the notes of the March 18, 2002 visit state: "Ms. Allison returns with her back still a bit achy.  The patient however moves around fairly well."  Examination notes indicate that "the neck shows almost normal range of motion accomplished somewhat slowly secondary to pain. Same is true of the lumbar spine.  Neurologically intact in the upper and lower extremities."  The treatment plan reflects renewal of Lortab 10 (dispense 60) and Xanax 1 mg (dispense 40) "for occasional achy moments," and a directive to return as needed.  Record at 447.

[5] Various earlier entries also describe Plaintiff's pain in terms that suggest it is neither severe nor disabling.  For example, the initial entry for Plaintiff's March 1998 office visit indicates that she had "return[ed] with her back still achy" and that the examination was largely unchanged from the visit five months earlier.  During that earlier, October 1997 visit, Plaintiff indicated she was "feeling a bit better after starting the Neurontin."   This, in turn, refers to a prescription given in September 1997 when Plaintiff came in "not with her back but right hip and posterior thigh achy," and stating "that this has in fact, been a bigger problem than the pain that she experienced on the left side prior to surgery."  Record at 236.

feel that she is capable of returning *to her previous type of employment*." Record at 220.

The ALJ's reasons for discounting the opinion of Dr. Feldman, particularly as to Plaintiffs' respiratory and pulmonary problems, are, likewise, supported by the record. *See* Record at 28-29. For example, the ALJ's conclusion that the results of the pulmonary function tests completed in July and August of 2003 were the result of "short-term exacerbating factors that, in addition to Plaintiff's smoking, exacerbated her condition," is supported by the record as is his ultimate conclusion that these tests "are not accurate indicators of her pulmonary status for any period of twelve continuous months." Record at 28-29. In addition to his reasons for finding the isolated function tests not to be accurate indicators of long term pulmonary status, the ALJ properly discounted the ability to work conclusion stated in the Respiratory Impairments Questionnaire completed by Dr. Feldman based on what the ALJ reasonably concluded were inconsistencies within or significant absences from that questionnaire. *See* Record at 29 (noting Feldman's acknowledgment that he was unaware of the extent of Plaintiff's ability to sit, stand and walk); Record at 560-62 (January 20, 2003 Questionnaire as to Respiratory Impairment which acknowledges lack of knowledge as to Plaintiff's ability to sit, stand or walk).

Dr. Feldman's statements on this form also support the ALJ's conclusion that Plaintiff's difficulties were exacerbated by her decision to continue smoking. For instance, in describing Plaintiff's "[r]esponse to medications," Dr. Feldman stated "fair, [patient] cont[inues] to smoke heavily." In response to the last inquiry which asks for "Prognosis/Impressions," Dr. Feldman stated "[patient] has been told repeatedly to stop smoking. As of 10/10/02, she still smoked." Record at 562.

For the reasons set forth above, the undersigned concludes that there was substantial evidence

7

in the record to support the Commissioner's decision denying coverage. The court further concludes that the ALJ applied the correct legal standard in reaching the decision that ultimately became the decision of the Commissioner.

## IV. CONCLUSION

For the reasons set forth above, this court declines to accept the Report and Recommendation. This court, therefore, AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

                                          s/ Cameron McGowan Currie
                                         CAMERON MCGOWAN CURRIE
                                         UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 16, 2006